757 S.E.2d 557

WELLS FARGO BANK, N.A., successor-in-interest to
Wachovia Bank, National Association, Plaintiff,

v.

MARION AMPHITHEATRE, LLC, David P. Gannon, Michael
Guarco, Carolina Entertainment Complex, LLC, and 4
Prophets, LLC a/k/a 4 Profits, LLC, Defendants,

Of whom David P. Gannon and Michael
Guarco are the Appellants,

And 4 Prophets, LLC, a/k/a 4 Profits, LLC, is the Respondent.

Appellate Case No. 2012–211806.

No. 5218.

Court of Appeals of South Carolina.

Submitted Nov. 1, 2013.

Decided April 16, 2014.

Edgar Lloyd Willcox, II and Walker H. Willcox, Willcox, Buyck & Williams, P.A., both of Florence, for Appellants.

John Paul Williams, Jr., of Marion, for Respondent.

FEW, C.J.

David P. Gannon and Michael Guarco appeal the special referee's order awarding 4 Prophets, LLC a $12.5 million default judgment. We reverse and remand to the circuit court for a damages hearing.[1]

## I. Facts and Procedural History

This appeal stems from a foreclosure action Wells Fargo Bank, N.A. initiated against Marion Amphitheatre, LLC, David P. Gannon, Michael Guarco, Carolina Entertainment Complex, LLC, and 4 Prophets concerning real property in Marion County. 4 Prophets filed an answer, asserting cross-claims against Marion Amphitheatre, Gannon, and Guarco. In the cross-claims, 4 Prophets alleged it entered into a written agreement with Guarco in 2006, pursuant to which 4 Prophets would own an equitable, undivided, one-half interest in the real property, if Guarco acquired the property. Guarco subsequently acquired the property, and he titled it in Marion Amphitheatre's name. 4 Prophets alleged Gannon, Guarco, and Marion Amphitheatre mortgaged the property to Wells

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

Fargo's predecessor-in-interest without 4 Prophets' knowledge or consent, and fraudulently allowed the property to go into foreclosure, thereby wrongfully depriving 4 Prophets of its equitable interest. 4 Prophets alleged the property "has a fair market value well in excess of $25 million dollars," and it sought $12.5 million in damages.

Gannon and Guarco did not respond to the cross-claims, and the clerk of court recorded an entry of default. The circuit court then referred the case to a special referee. Gannon and Guarco filed a motion to set aside the entry of default, which the special referee denied. During the hearing on that motion, the special referee directed 4 Prophets to submit an affidavit setting forth the amount of damages and a proposed written order for judgment. The managing member of 4 Prophets submitted an affidavit stating he "believe[d] the present fair market value of the subject property to be the sum of $25 million," and 4 Prophets was entitled to $12.5 million.

Gannon and Guarco objected to 4 Prophets' proposed order, and the special referee held a hearing to address their objections. At the hearing, Gannon and Guarco argued the damages were not liquidated or a sum certain under Rule 55(b)(1) of the South Carolina Rules of Civil Procedure. 4 Prophets did not present any evidence at this hearing other than the affidavit. After the hearing, the special referee issued the order proposed by 4 Prophets.

In the order, the special referee held that because Gannon and Guarco defaulted, they admitted the property had a fair market value of $25 million, as alleged in 4 Prophets' cross-complaint. The special referee awarded liquidated damages based on 4 Prophets' claim to a one-half interest in the property. Guarco filed a "Motion to Amend Order and Judgment," which the special referee denied.

## II. Law and Analysis

█ Gannon and Guarco argue the special referee erred by finding the damages were liquidated, and the special referee should have conducted a damages hearing. We agree.[2]

---

2. We have reviewed 4 Prophets' arguments relating to the timeliness of this appeal, and we find the arguments are without merit.

■ "A defendant in default admits liability but not the damages...." *Solley v. Navy Fed. Credit Union, Inc.*, 397 S.C. 192, 203, 723 S.E.2d 597, 603 (Ct.App.2012) (citing *Renney v. Dobbs House, Inc.*, 275 S.C. 562, 566, 274 S.E.2d 290, 292 (1981)). "[T]he defaulting defendant has conceded liability. However, a defaulting defendant does not concede the [a]mount of liability." *Solley*, 397 S.C. at 203, 723 S.E.2d at 603 (quoting *Howard v. Holiday Inns, Inc.*, 271 S.C. 238, 242, 246 S.E.2d 880, 882 (1978)). Even "[i]n a default case, [therefore,] the plaintiff must prove ... the amount of his damages, and such proof must be by a preponderance of the evidence." *Solley*, 397 S.C. at 204, 723 S.E.2d at 603 (citation omitted).

■ In *Solley*, we relied on *Renney* and *Howard* for the principle that a plaintiff must prove his damages even when the defendant has defaulted as to liability. *Renney* and *Howard*—both decided before the Rules of Civil Procedure were adopted— [3] are among the most recent in a line of cases in which our supreme court criticized trial courts for awarding default damages in the inflated amounts sometimes found in the prayer for relief in a complaint. In *Howard*, for example, the supreme court stated, "It is common knowledge ... that in a tort action the amount stated in the prayer for relief often bears little relation to the amount which the plaintiff is entitled to recover. The prayer in an action may not serve as a substitute for proof." 271 S.C. at 240, 246 S.E.2d at 881. In *Renney*, the supreme court stated, "This case is one more in a series of cases which has given the court great concern. They involve large awards in default claims involving unliquidated damages." 275 S.C. at 566, 274 S.E.2d at 292. In *Solley*, we reversed part of an award of special damages, not because the trial court awarded the amount demanded in the prayer, but because the plaintiff failed to prove the amount of the alleged loss. 397 S.C. at 210, 723 S.E.2d at 606. As *Solley* demonstrates, therefore, the principle that a plaintiff must prove his damages even when the defendant is in default applies to all damages claims in default cases.

The principle is incorporated into Rule 55(b) of the South Carolina Rules of Civil Procedure. Under the rule, when a plaintiff makes a claim for liquidated damages, a sum certain,

---

3. *See* Rule 86, SCRCP ("These rules shall take effect on July 1, 1985.").

or a sum which can by computation be made certain, he may prove the amount of his damages simply by filing an affidavit of the amount due. *See* Rule 55(b)(1), SCRCP ("When the claim of a party seeking judgment by default is for a liquidated amount, a sum certain or a sum which can by computation be made certain, the judge, upon motion or application of the party seeking default, and *upon affidavit of the amount due,* shall enter judgment for that amount...." (emphasis added)).[4] In some circumstances, "A verified pleading may be used in lieu of an affidavit...." *Id.*[5] Even when the claim fits into one of the damages categories that Rule 55(b)(1) allows to be proven by affidavit or verified complaint, however, the trial court retains the discretion to conduct a hearing. *See* Rule 55(b)(2), SCRCP ("If ... it is necessary ... to determine the amount of damages ..., the court may conduct such hearing ... as it deems necessary and proper....").

In this case, 4 Prophets' alleged loss of the value of real estate does not fit into any of the categories of damages a plaintiff may prove by affidavit or verified complaint. A "[c]laim for ... damages is 'liquidated' in character if [the] amount thereof is fixed, has been agreed upon, or is capable of ascertainment by mathematical computation or operation of law." *Black's Law Dictionary* 839 (5th ed.1979); *see also Lewis v. Congress of Racial Equality,* 275 S.C. 556, 560, 274 S.E.2d 287, 289 (1981) ("In liquidated-damages cases, the amount is usually a sum certain[,] or at least the amount is capable of ascertainment by computation.");[6] *Beckmann Con-*

---

4. We recognize that "liquidated damages" overlaps with, and possibly includes, all damages that are sum certain or that can by computation be made certain.

5. In *Thomas & Howard Co. v. T.W. Graham & Co.,* 318 S.C. 286, 457 S.E.2d 340 (1995), our supreme court recognized a fourth category in which a plaintiff may prove damages without a damages hearing. The court held that in an action on an account, the trial court may enter default judgment without a hearing when the amount of damages is supported by a verified statement of account that is served with the complaint. 318 S.C. at 290, 457 S.E.2d at 342–43.

6. *Lewis* also predates the Rules of Civil Procedure. *Lewis* remains applicable, however, because the term "liquidated damages" was added to the language we adopted in 1998 from Federal Rule of Civil Procedure 55(b)(1) "since this is the terminology which has traditionally been

*crete Contractors, Inc. v. United Fire & Cas. Co.*, 360 S.C. 127, 131, 600 S.E.2d 76, 78 (Ct.App.2004) (stating unliquidated damages are " '[d]amages that . . . cannot be determined by a fixed formula, so they are left to the discretion of the judge or jury' " (quoting *Black's Law Dictionary* 397 (7th ed.1999))). Thus, 4 Prophets' damages are not liquidated. 4 Prophets' damages are also not a sum certain and cannot be made certain by computation. *See Black's Law Dictionary* 204 (5th ed.1979) (defining certain as "precise; . . . definitive; . . . unambiguous; or, in law, capable of being identified or made known without liability to mistake or ambiguity, from data already given"). The valuation of real estate is a subjective determination, and thus, damages measured by loss of value in real estate are inherently uncertain. Even the statement of value upon which 4 Prophets relies in this case is, "I believe the present fair market value . . . to be . . . $25 million," and is based on the hearsay recital of two appraisals, both of which were at least eighteen months old at the time 4 Prophets filed the affidavit. The simple fact that a party claims a specific amount of damages does not make the claim a sum certain.

Nevertheless, relying only on the affidavit of 4 Prophets' managing member and Rule 55(b)(1), the special referee awarded damages in the amount of $12.5 million. Because 4 Prophets' theory of the measure of its damages was based solely on the value of real estate, which is not liquidated, not a sum certain, and cannot be made certain by mathematical calculation, we hold the special referee erred in awarding damages without conducting a damages hearing. *See* 46 Am.Jur.2d *Judgments* § 298 (2006) ("In the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing. Where damages claimed are not readily ascertainable from the pleadings and record, a hearing is appropriate to determine the amount of damages."); *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir.1983) (holding a judgment by default may not be entered without a hearing on damages unless the complaint indicates the amount claimed is liquidated or capable of ascertainment from definite figures

---

used in South Carolina." Rule 55, SCRCP note to the 1998 Amendments.

contained in the documentary evidence or in detailed affida-vits).

## III. Conclusion

Accordingly, we reverse and remand to the circuit court for a damages hearing. **REVERSED AND REMANDED.**

PIEPER and KONDUROS, JJ., concur.