20856

George PETTY, d/b/a Petty's Skate Arena, Respondent, v. WEYER-HAEUSER COMPANY and Burris Construction Company, Inc., of which Weyerhaeuser Company is Appellant.

(251 S. E. (2d) 735)

*Boyd, Knowlton, Tate & Finlay,* Columbia, *for appellant.*

*Saleeby, Cox, Driggers & Bledsoe,* Hartsville, *for respondent.*

January 23, 1979.

LITTLEJOHN, Justice:

The defendant, Weyerhaeuser Company (Weyerhaeuser), appeals from an order of the circuit judge denying its motion to (1) set aside the service of the summons and com-

plaint, (2) set aside an order of default taken against it, and (3) dismiss the suit against it for lack of *in personam* jurisdiction.

The action was commenced in February 1976 when plaintiff Petty filed a complaint against Weyerhaeuser and a co-defendant, Burris Construction Company, Inc. The allegations against Weyerhaeuser are in products liability on the theory of negligence, warranty and strict liability. More specifically, the claim against Weyerhaeuser is that it manufactured and supplied to the plaintiff a defective product unsuited as flooring for plaintiff's skating rink.

Weyerhaeuser is a Washington State corporation. It was once qualified to do business in South Carolina, with C. T. Corporation System of Greenville serving as its agent for service. However, in 1967, it withdrew its qualification and has had no relationship with C. T. Corporation System since.

Plaintiff undertook service of process by mailing to the office of the Secretary of State for South Carolina two copies of the summons and complaint. Accompanying the two copies was an instruction that one copy be served on Weyerhaeuser through C. T. Corporation System, the plaintiff having been informed by the Secretary of State that C. T. Corporation System was Weyerhaeuser's registered agent in South Carolina. On February 13, the Secretary of State sent, by registered mail, a copy of the summons and complaint to the following address:

Weyerhaeuser Company
c/o C. T. Corporation System
409 E. North Street
Greenville, South Carolina 29601

C. T. Corporation System received the summons and complaint on February 7, 1976, returned a receipt for them to the office of the Secretary of State, and forwarded the summons and complaint to Weyerhaeuser at its home office in Tacoma, Washington.

On February 27, 1976, George H. Bonneville, in-house counsel for Weyerhaeuser, telephoned the plaintiff's attorneys, acknowledging receipt of the summons and complaint, and requesting an extension of time to answer the plaintiff's complaint. This telephone conversation was confirmed and documented by a letter from Weyerhaeuser's attorney, dated March 1, 1976. The letter stated, in relevant part:

"Confirming our telephone conversation of February 27, *please consider this letter as an informal notice of appearance* on behalf of Weyerhaeuser Company in the suit you recently instituted on behalf of your client, Petty's Skate Arena, against Weyerhaeuser Company and Burris Construction Company." (Emphasis added.)

The letter went on to state that Weyerhaeuser would like to "explore settlement possibilities prior to retaining counsel in South Carolina for formal appearance, answer and defense or settlement by local counsel."

It also said:

"If and when you conclude that the prospects of settlement of the claim against Weyerhaeuser do not justify further delay, I will arrange for formal appearance and answer by South Carolina counsel immediately upon notice from you."

Plaintiff's counsel, on March 10, 1976, acknowledged receipt of the letter, saying:

"I am simply writing to you to confirm the fact that we are granting you an extension of time to answer or otherwise plead in this matter, . . .."

On May 24, 1976, plaintiff's counsel wrote to Weyerhaeuser, offering to settle its claim upon payment of $40,000.00. Weyerhaeuser did not respond.

On July 7, 1976, plaintiff's counsel again wrote Weyerhaeuser, asking it to:

". . . let us know at your earliest convenience whether you are going to retain counsel and defend this case or settle Mr. Petty's claim."

Weyerhaeuser did not respond.

On August 9, plaintiff's counsel wrote Weyerhaeuser, saying:

"Please let us have some response from you concerning whether you will meet our settlement demand, or send us your answer to our complaint within ten days of the date of this letter."

Weyerhaeuser again ignored the communication.

On August 21, ten days having elapsed without reply, plaintiff's counsel filed what purported to be an affidavit of default, and on August 25, took an order of the court declaring Weyerhaeuser in default and referring the matter to a master to ascertain allowable damages. On September 10, Weyerhaeuser's counsel wrote to plaintiff's counsel apologizing for ignoring previous correspondence and telling plaintiff's counsel that he was sending the entire file to a Columbia, South Carolina law firm with the request that it represent Weyerhaeuser's interest.

Subsequently, the master held a hearing and recommended judgment for damages in the amount of $118,-750.00. This recommendation was accepted and the circuit judge issued his order in November, granting judgment in that amount.

On December 10, 1976, Weyerhaeuser's South Carolina attorneys served counsel for the plaintiff with a notice of special appearance and with a motion to quash and set aside the service of the summons and complaint, to set aside the order of default, and to dismiss the suit for lack of jurisdiction over the person of defendant Weyerhaeuser.

The agreed statement of facts stipulates that there were before the judge three issues: (1) whether service of process was properly made on defendant Weyerhaeuser, thereby

conferring *in personam* jurisdiction in the court, (2) whether any form of substituted service was properly perfected by plaintiff so as to confer *in personam* jurisdiction on the court, and (3) whether the order adjudging defendent to be in default was invalid due to irregularities contained in the court's record. In addition, plaintiff raised an issue before the trial judge of whether Weyerhaeuser had entered a voluntary appearance in the action prior to the entry of the order of default.

The judge overruled the motion, holding that plaintiff's service of process and proof of service were properly made and established, and holding that:

". . . irrespective of service of process, Weyerhaeuser made a general appearance and submitted itself to the jurisdiction of the Court of Common Pleas for Darlington County, . . .."

From a reading of the complaint, it is obvious that Weyerhaeuser may be reached under our "long arm statutes," §§ 36-2-804,-805 and -806, *Code of Laws of South Carolina* (1976). We are of the opinion, however, that there was no compliance with the statutes insofar as service of process and proof of service are concerned. The correct result was reached on the alternate theory, which we now discuss.

The finding of the judge that Weyerhaeuser made a general appearance is abundantly supported by the record. Oftentimes whether a general appearance has been made involves a matter of intent, but some conduct by the defendants constitutes an appearance as a matter of law. *Thompson v. Queen City Coach Co.,* 169 S. C. 231, 168 S. E. (2d) 693, 695 (1933). The lower Court found intent to waive its right to contest the jurisdiction of the court. We are, however, of the opinion that Weyerhaeuser entered an appearance as a matter of law such that proof of intent is not required. Weyerhaeuser's attorney stated, ". . . please consider this letter an informal notice of appearance on behalf of Weyerhaeuser Company . . .." As held in *Hensley v. Green,* 36 F. Supp. 671, South Carolina ". . . law recog-

nizes only two kinds of appearances, special and general." There is certainly no contention that Weyerhaeuser attempted to make a special appearance. The appearance which counsel would denominate "informal" was therefore, as a matter of law, a general appearance.

Section 15-9-70 of our Code provides:

"A voluntary appearance of a defendant is equivalent to personal service of the summons upon him."

Circuit Court Rule 17 states:

"Service of notice of appearance or retainer generally by attorney for the defendant shall in all cases be deemed an appearance, and the plaintiff on filing such notice, at any time thereafter, with proof of service thereof, may have the appearance of the defendant entered as of the time when such notice was served."

As indicated hereinabove, the agreed statement of facts stipulate that there was before the lower court the question of ". . . whether the order adjudging the defendant to be in default was invalid due to irregularities contained in the court's record." Having determined that the court has jurisdiction because Weyerhaeuser made a general appearance, we turn now to the question of the effect of counsel's failure to notify Weyerhaeuser of its motion to declare it in default. Traditionally, in this state affidavits filed as a basis for a default judgment have averred, in essence, that ". . . no answer, demurrer, or *notice of appearance* has been served upon counsel for the plaintiff." The affidavit of default filed in this case set forth, briefly, the series of events which had transpired between counsel for the plaintiff and counsel for Weyerhaeuser. It concluded by averring that Weyerhaeuser ". . . has not answered, demurred to, or made any appearance in the said action, and the undersigned is informed and believes that the said Co-Defendant Weyerhaeuser, is now in default . . .."

The Judge who granted the default order held out that ". . . no answer, demurrer, or other *formal* notice of appear-

ance has been served upon the Plaintiff or filed in this Court, as required by law." (Emphasis added.)

Our Code § 15-9-970 provides:

"When a defendant shall not have demurred or answered, service of notice or papers in the ordinary proceedings in an action need not be made upon him unless he be imprisoned for want of bail *but shall be made upon him or his attorney if notice of appearance in the action has been given.*" (Emphasis added.)

Clearly, this section of the Code required counsel for the plaintiff to give notice of motion to the defendant, which was not done. The purpose of this section is to prevent the harsh and drastic action of default judgment. It is the policy of the law to favor the trial of cases on the merits. The purpose of the statute is to provide a party defendant with a timely opportunity to urge reasons against entry of default judgment. If there is any good reason for denying the judgment, the defendant should be given an opportunity to assert it so that it may be thrashed out before judgment is entered or denied.

Inasmuch as the lower court did not deal with this issue, a remand is in order so that the parties may be heard on the question of whether the default judgment should be set aside.

Attention is called to our recent opinion of *Howard v. Holiday Inns,* S. C., 246 S. E. (2d) 880, 1978, wherein we held that even if a defendant were in default, he had the right to participate in the hearing for the assessment of damages and could participate by cross-examining witnesses and objecting to evidence.

Affirmed and remanded.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.